958 F.2d 378
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
EXETER ORANGE COMPANY, INC., Sequoia Orange Co., Inc.,
Sequoia Enterprises; Carl A. Pescosolido, Jr.;
Marvin L. Wilson; Oleah H. Wilson,
Defendants-Appellants.
 No. 90-16300.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Submission (Deferred Oct. 10, 1991.
Resubmitted March 18, 1992.
Decided March 27, 1992.
 
 Before GOODWIN, WILLIAM B. NORRIS and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 A decade of refusal to comply with federal marketing orders governing navel oranges, Valencia oranges, and lemons, see 7 C.F.R. Parts 907, 908, and 910, as authorized in the Agricultural Marketing Act of 1937, as amended, 7 U.S.C. § 601 et seq., ("AMAA") led to this permanent injunction. We affirm.
 
 
 3
 The United States filed the initial action in this case almost a decade ago on June 11, 1982 seeking a preliminary injunction to require the defendants to comply with the marketing orders. On August 4, 1982, the district court granted a preliminary injunction ordering the defendants to file reports pertaining to the quantity of oranges and lemons they sold, and to pay the assessments due under the marketing orders. The filing of reports is necessary for the United States Department of Agriculture ("USDA") to monitor compliance with its shipping quotas. The payment of assessments finances the administration of the marketing orders. The district court order was appealed to and affirmed by this court. See Navel Orange Admin. Committee v. Exeter Orange Co., 722 F.2d 449 (9th Cir.1983).
 
 
 4
 On August 30, 1984, the defendants were held in contempt for violating the preliminary injunction. The court found the defendants' behavior to be "the height of silliness, and obstructionist conduct taken in bad faith." As late as 1988 the district court found that the defendants had destroyed records that the court had ordered preserved. On December 5, 1988, the United States moved for summary judgement requesting that the preliminary injunction be made permanent (requiring the filing of reports and the payment of assessments) and that the defendants be ordered to provide access to their records and premises for the purposes of government audits. On March 17, 1989 the District Court granted the motion with respect to navel and Valencia oranges. On June 28, 1990 the Court amended its order to include the Lemon Marketing Order as well. The permanent injunction ordered the defendants to comply fully with the AMAA and to comply fully with all provisions of the relevant marketing orders. Among other things, the injunction required the defendants to (i) file past reports as required, (ii) file all future reports, (iii) pay all current and future assessments and (iv) provide the government access to their premises and records for the purpose of verifying reported information. Defendants filed a timely appeal. After hearing arguments, submission of this case was deferred pending the resolution of Riverbend Farms v. Madigan, No. 90-15505, No. 90-15781, slip op. 2649, (9th Cir. March 17, 1992).[1]
 
 
 5
 The defendants maintain that material issues of fact exist and therefore summary judgement should not have been granted. The claim centers around a statement made by the district court in the order granting the injunction. Government auditors claimed that they were denied access to records by one of the defendants, Wilson. Wilson alleged that sufficient access had been granted. In assessing these competing claims, the court stated:
 
 
 6
 Clearly, there is a conflict between the auditors affidavits and that of Wilson. Wilson's credibility is somewhat hampered by the fact that one of the other individual defendants, namely Pescosolido, wrote a letter on May 14, 1987, stating: "Sequoia Orange and its attorneys will again consider the committees request for an audit once the final decision has been reached on the A.M.S.'s appeal [concerning the validity of the rules implementing the shipping quotas]." Hence, the Court is unable to say what the factual situation is with respect to this matter.
 
 
 7
 Defendants latch on to the court's final sentence as a "concession" of the existence of material factual issues.
 
 
 8
 Under Fed.R.Civ.P. 56(c), summary judgement may be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." The rule does not require that there be no factual disputes. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Conversely, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Electric Industrial Co. v. Zenith Radio, Corp., 475 U.S. 574, 587 (1986) (quoting First Nat. Bank v. City Service Co., 391 U.S. 253, 289 (1968)).
 
 
 9
 While the events that transpired during the government audit constitute a disputed fact, they do not constitute a genuine issue of material fact, and hence do not warrant the reversal of the district court's grant of summary judgement. When the entire record is examined, no reasonable trier of fact could conclude that the injunctive relief sought by the government was unjustified in light of the defendants' conduct. The defendants would have us reduce a dispute that has lasted almost an entire decade into a factual examination of the events of a single afternoon. When the defendants' actions are viewed in the context of the entire controversy, there can be no genuine dispute but that the district court's injunction was justified.
 
 
 10
 Defendants argue that the permanent injunction was improperly granted because the marketing orders have been amended to codify reporting requirements. The amendment process was initiated on January 11, 1985. See 50 Fed.Reg. 1433 (January 11, 1985). The final version of the rules became effective one July 7, 1989. See 54 Fed.Reg. 24322 (June 7, 1989). The rules contain specific provisions for the filing and retention of reports, as well as requirements that the government be provided access to "handlers" records and premises. See 7 C.F.R. §§ 907.70-73; 907.140-42; 908.70-73; 908.140-42; 910.70-71; and 910.170.
 
 
 11
 The permanent injunction was issued on June 28, 1990, one year after the final version of the rules became effective. A district court's grant of injunctive relief is reviewed for abuse of discretion. See Tollis Inc. v. San Bernardino County, 827 F.2d at 1331. Given the defendants behavior throughout the history of this case, it would be difficult to conclude that the district court abused its discretion in issuing the permanent injunction. The 1982 preliminary injunction was granted, in part, because the defendants were violating the law by not paying assessments on the oranges and lemons they sold. In 1984 the defendants were held in contempt for violating the preliminary injunction. Finally, the permanent injunction was issued because the defendants were not providing access to reports and information as required by law.
 
 
 12
 An order commanding the defendants to obey the law is not inappropriate. We repeat what we held in affirming the preliminary injunction. "The district court did not commit error in granting the preliminary injunction in essence ordering Exeter et al. to comply with the requirements demanded of them under the Agricultural Marketing Agreement Act." Naval Orange Admin. Committee 722 F.2d at 453. The codification of reporting requirements do not invalidate the permanent injunction. The district court did not abuse its discretion in ordering the injunctive relief.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The injunction in the present case seeks to enforce the USDA's weekly volume restrictions under the various marketing orders. In Riverbend we upheld the validity of the weekly volume restrictions under the navel orange marketing order. Past agency procedures were held to violate the APA, but such violations were deemed harmless error, slip op. at 2664